# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAYMOND A. HRABOS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:12cv34 |
| | ) **Electronic Filing** |
| **SPRINGDALE BOROUGH, CHIEF** | ) |
| **OF POLICE JOSEPH NAVIGLIA, JR.,** | ) |
| **SPRINGDALE BOROUGH OFFICERS** | ) |
| **MARK E. THOM**, **JOHN WALLS,** and | ) |
| **JEREMY C. LIOTTA** and | ) |
| **SPRINGDALE BOROUGH COUNCIL** | ) |
| **MEMBER DANIEL P. COPELAND,** | ) |
| | ) |
| Defendants. | ) |

## OPINION

Raymond A. Hrabos, ("plaintiff") commenced this civil rights action against Springdale Borough, Chief of Police Joseph Naviglia Jr., Springdale Borough Police Officers Mark E. Thom, John Walls, and Jeremy C. Liotta, and Springdale Borough Council Member Daniel P. Copeland (collectively "defendants") asserting claims for use of excessive force in violation of the Fourth Amendment, malicious prosecution in violation of the First Amendment, and violation of substantive due process under the Fourteenth Amendment pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. Presently before the court are defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions will be granted as to plaintiff's claims for (1) use of excessive force in violation of the Fourth Amendment against any defendant other than defendant Thom, (2) malicious prosecution in violation of the Fourth Amendment against all defendants and (3) supervisory liability against Chief Neviglia for participating, directing or acquiescing in the

alleged violation of plaintiff's civil rights. The referenced supervisory claim against Chief Naviglia will be dismissed without prejudice. The malicious prosecution claim in violation of the Fourth Amendment is deemed to have been withdrawn and is therefore dismissed without prejudice in accordance with that withdrawal. The motion will be denied in all other aspects.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere

2

possibility of misconduct.  Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8  (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Phillips, 515 F.3d at 235; see also  Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted).  "Once a claim has

3

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

The record read in the light most favorable to plaintiff establishes the background set forth below. On February 11, 2010, plaintiff, a police officer employed by the Allegheny County Police Department, was driving home after work on Center Street within the Borough of Springdale, Pennsylvania, when his travel was impeded by a vehicle obstructing the roadway. The vehicle stopped in the middle of the road was a late model truck. Walls was driving the truck and Thom was in the passenger seat. Walls and Thom were both wearing police uniforms, but they were covered by outer garments that lacked any discernible police insignia. Walls and Thom were off-duty at the time, and their truck was not a marked police vehicle.

Upon encountering the truck, plaintiff stopped and waited for it to move out of the roadway so that he could proceed. Plaintiff sounded his horn after a short period of time. He then decided to approach Walls' truck on foot to figure out why it continued to block the roadway.

After reaching the truck plaintiff asked Walls if he intended to move the vehicle so it would not be blocking the roadway. Walls told plaintiff that he would do so after he and Thom finished a conversation with Copeland, who was standing along the roadway on the vehicle's passenger side. Plaintiff did not see or detect anything to suggest that the discussion with Copeland involved some sort of police emergency.

As plaintiff spoke with Walls, Thom exited the passenger side of the vehicle, approached plaintiff from the rear of the truck, and pointed a gun at him. Plaintiff informed Thom that plaintiff was a police officer and Thom then holstered his firearm. Thom then rushed toward plaintiff without warning and knocked him to the ground over a snow embankment. During the

4

ensuing attack plaintiff repeatedly declared that he was a police officer within the Commonwealth of Pennsylvania and that he had identification to prove it. After stating this a number of times Thom ended his assault of plaintiff.

Following the incident plaintiff informed Thom and Walls that Thom's actions constituted an assault and plaintiff intended to notify the Allegheny County District Attorney about Thom's assault. Thom became visibly irate.

Liotta arrived on scene and was on duty as a Springdale police officer. Liotta questioned Thom, Walls, and plaintiff about the incident. Following Liotta's questioning plaintiff left the scene and continued to his residence in Springdale. Liotta gave no indication that plaintiff might be subjected to criminal charges as a result of his encounter with Walls and Thom.

Liotta subsequently filed criminal charges against plaintiff for making terroristic threats, reckless endangerment, harassment and disorderly conduct. From plaintiff's perspective these charges were without reasonable foundation and were not supported by probable cause. Thom, Walls, and Copeland made false statements, false accusations, and provided false testimony in support of the charges, all in an effort to charge and/or convict plaintiff improperly. The charges of terroristic threats, reckless endangerment, and harassment were dismissed at a preliminary hearing before Magisterial District Judge Leonard Hromyak on March 29, 2010. Plaintiff elected not to testify at the preliminary hearing. Magisterial District Judge Hromyak reduced the charge of disorderly conduct to a summary level disorderly conduct and found plaintiff guilty of that offense.

Plaintiff requested trial de novo in the Court of Common Pleas of Allegheny County. On December 13, 2010, after a full hearing on the merits, the Honorable Robert Gallo found plaintiff not guilty of the disorderly conduct charge. He admonished all of the participants for continuing

with matter, stating: "All of you shouldn't be here.  This is insane to come down here on this case.  Just insane to even bring it here, this far."

Defendants attack plaintiff's complaint for failure to state a claim on a number of fronts. They assert that a Fourth Amendment claim for use of excessive force has not been stated against Walls, Liotta, Naviglia, or Copeland; the absence of any allegation asserting a deprivation of liberty precludes a claim for malicious prosecution in violation of the Fourth Amendment; the failure to plead the absence of probable cause and/or a deprivation of liberty precludes a claim for retaliatory discharge under the First Amendment; the failure to allege that Thom, Walls or Naviglia filed charges against plaintiff or that Thom, Walls or Copeland were acting under color of state law likewise precludes a claim for retaliatory discharge under the First Amendment against these defendants; plaintiff's claims under the Fourth and First Amendments preclude the bringing of a claim under the substantive component of the Due Process Clause of the Fourteen Amendment; the complaint contains insufficient factual grounds to support municipal liability against the Borough of Springdale and/or supervisory liability against Chief Naviglia; and all the individual defendants are entitled to qualified immunity in any event.

Plaintiff acknowledges that he only intended to allege Fourth Amendment use of excessive force claim against Thom and "withdraws" his malicious prosecution in violation of the Fourth Amendment claim.  He maintains that a malicious prosecution claim in violation of the First Amendment has been stated because Walls, Thom and Copeland all made false statements to support the charges against plaintiff after plaintiff indicated he was going to report Thom's conduct to the District Attorney's office, Liotta filed the charges without probable cause or any reasonable basis for doing so, plaintiff was exonerated on all of the charges, plaintiff's factual account of the encounter establishes that plaintiff acted in a lawful manner and did not

6

commit any crime (thus establishing the absence of probable cause for any criminal charge), a deprivation of liberty is not an element of a claim for malicious prosecution in violation of the First Amendment, the complaint contains adequate factual premises for municipal and supervisory liability, the rights upon which the claims have been founded were clearly established, and there are facts to support an inference that Copeland was acting under color of state law.

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right.[1] Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." ) (citing Groman, 47 F.3d at 633).

Defendants' assertion that a deprivation of liberty is necessary to maintain a malicious prosecution claim in violation of the First Amendment is misplaced. The claim as presented draws on two areas of §1983 jurisprudence. First, a plaintiff must be able to satisfy the common law elements of a malicious prosecution claim. Merkle v. Upper Dublin School District, 211 F.3d 782, 792 (3d Cir. 2000). These are: "(1) the defendants initiated a criminal proceeding; (2)

---

[1] Section 1983 creates liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

7

the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Id. (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir.1996)).

Second, the plaintiff must satisfy the components of the claim that bring it within the scope on § 1983. Id. at 792 (outlining the Third Circuit's development of a malicious prosecution claim in the aftermath of Albright v. Oliver, 510 U.S. 266 (1994)). In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Id. at 793 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir.1997)).

Unlike malicious prosecution claims under the Fourth Amendment, the requirements for a malicious prosecution claim in violation of the First Amendment do not include a deprivation of liberty. Compare McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (malicious prosecution claim premised on a violation of the Fourth Amendment includes as an element a showing that "(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.") (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003)). Defendants' effort to gain dismissal on this ground must be rejected.

Similarly, defendants' contention that plaintiff has failed to plead the absence of probable cause in support of this claim is unavailing. First, heightened fact pleading is not a standard that can be thrust upon plaintiff at this juncture. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,

8

507 U.S. 163, 168 (1993)). Second, plaintiff has pled a specific and distinct set of factual acts that define the encounter that occurred in Springdale on February 11, 2010. That encounter must be taken as true and the account of it does not supply a basis for inferring the existence of probable cause to support the charges assertedly filed against plaintiff. To the contrary, it supplies a basis from which it readily can be inferred and assumed that there was a lack of probable cause. It is defendants' obligation to dispute the factual account of what occurred and develop a record to support any such contentions. Accordingly, this aspect of defendants' motion fails as well.

Defendant Thom, Walls and Copeland's contention that they cannot be subject to liability because plaintiff has failed to identify action under color of state law on their behalf is misplaced. The Supreme Court has observed that the criteria for determining the presence of state action lacks rigid simplicity. Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001). Over the years the Court has established a number of approaches to answer the general question of whether there is a sufficiently "close nexus between the State and the challenged action [so] that seemingly private behavior may be fairly treated as that of the State itself." Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974)). It has identified a host of factors that can "bear on the fairness of such an attribution," such as when (1) the challenged activity results from the state's exercise of coercive power, (2) the state provides significant encouragement, either overt or covert, or (3) a private party becomes a willful participant in joint activity. Id. at 296 (collecting cases in support).

In Crissman v. Dover Downs Entertainment Inc., the Third Circuit followed Brentwood's approach to evaluating allegations of state action by private parties. Crissman, 289 F.3d 231, 239 (3d Cir. 2002). Regardless of whether the approach is treated as "tests" or "facts,"

"Brentwood directs courts to focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to assure that constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'"[2] Id. (citing Brentwood, 531 U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original)). In other words, the basic question is whether the challenged act can be "fairly attributed to the state." Crissman, 289 F.3d at 231 (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

Brentwood highlighted Lugar as an example of when private party conduct may be fairly attributed to the state under the theory of joint activity. Brentwood, 531 U.S. at 295. Lugar set forth two central principles to guide the fact-intensive inquiry in this area: "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible" and "[s]econd the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Lugar, 457 U.S. at 937.

Conspiratorial conduct can satisfy the two principles highlighted in Lugar. Lugar, 457 U.S. at 931. In examining its prior precedent in this area, the Court observed:

> As is clear from the discussion in Part II, we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. The rule in these cases is the same as that articulated

---

[2] The Supreme Court pointed out in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), that it has never been clear "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in [each] situation." Id. at 939; see also Groman, 47 F.3d at 639 n. 16. Brentwood appears to embrace the second understanding. Crissman, 289 F.3d at 239 n. 12.

> in <u>Adickes v. S. H. Kress & Co.</u>, *supra*, 398 U.S., at 152, 90 S. Ct., at 1605–1606, in the context of an equal protection deprivation:
>
>> "'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" quoting <u>United States v. Price</u>, 383 U.S., at 794, 86 S. Ct., at 1157.

<u>Id.</u> at 941. In <u>Adickes</u>, the Court recognized that a "private party's joint participation with a state official in a conspiracy to discriminate would constitute both 'state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights' and action 'under color' of law for purposes of [ § 1983]." <u>Id.</u> (quoting <u>Adickes</u>, 398 U.S. at 152); <u>accord</u> <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980) ("[a]lthough not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." ). In this setting the first principle may be satisfied by the state official joining with the party to carry out a state procedure for a constitutionally prohibited reason. <u>Adikes</u>, 398 U.S. 152 ("Although this is a lawsuit against a private party, not the State or one of its officials, our cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in The Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes."); <u>accord</u> <u>Dennis</u>, 449 U.S. at 31-32 (allegations that an official act by a state court judge was the product of a corruption conspiracy involving bribery of the judge were sufficient to assert action under color of state law on the part of the private parties); <u>Abbott v. Latshaw</u>, 164 F.3d 141, 198 (3d Cir. 1998) (allegations that ex-wife formed

agreement with state constable to repossess vehicle without affording ex-husband advance notice and an opportunity to be heard prior to the seizure and effectuated that agreement with aid of constable and local police officer stated § 1983 claim against ex-wife).

The above principles implicitly are present in plaintiff's complaint. Plaintiff specifically alleges that Liotta brought unfounded charges against plaintiff and thus invoked the force of the state to punish for criminal violations. Thom, Walls and Copeland supplied false statements, accusations and testimony in support of those charges. All of this purportedly was motivated by a desire to retaliate against plaintiff for expressly threatening to take action in response to Thom's misconduct. Thus, the pleading standards have been satisfied. See Phillips, 515 F.3d at 235 (A complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); Wilkerson, 522 F.3d at 321 (same).[3]

The Borough of Springdale's challenge also falls short of the mark on the current record. Whether a municipal entity may be held liable under § 1983 is governed by the doctrine announced in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). There, the Supreme Court held that liability against such an entity may not be established by the respondeat superior doctrine, but instead must be founded upon evidence indicating the

---

[3] Liotta's contention that he is entitled to dismissal because the complaint does nothing more than aver that he was misled by the other defendants' false statements is premised on the inference and assumption that Liotta only was aware of the other individual defendants' false statements. The complaint, however, alleges that Liotta filed the charges without probable cause or reasonable foundation to do so. Thus, it is alleged that Liotta was aware from plaintiff's account of the events and the facts garnered from his investigation that the charges were baseless.
    Furthermore, to the extent Liotta relied on his fellow officers' account of the existence of probable cause to bring the charges, his ability to establish probable cause is no better than that of his fellow officers. See Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997) ("statements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause."). At the very least, the competing inferences about Liotta's knowledge and understanding of the underlying events must be drawn in plaintiff's favor at this juncture.

government itself supported a violation of the plaintiff's constitutional rights. Id. at 694; see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) (stating "municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting Monell, 436 U.S. at 694).

Proving a government policy or custom can be accomplished in a number of different ways. Bielevicz, 915 F.2d at 850. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. Id. (citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 42 U.S. 919 (1989)).

Here, the alleged policy is sufficiently identified. Plaintiff alleges that Chief Naviglia had responsibility to assure that the Borough's police officers were properly trained, supervised and disciplined. He also had notice that one or more of the officers involved had in the past violated citizens' constitutional rights by effectuating false arrests, use of excessive force and the filing of false and unsupported criminal charges. These types of violations had occurred with enough frequency to make the violation of plaintiff's rights along the same lines beyond that of an isolated incident and part of an ongoing pattern and practice of police abuse within the Springdale Police Department.

While the above does not rise much above a formulaic recitation of the elements for municipal liability, it nevertheless is (by the narrowest of margins) grounded in enough fact to nudge the claim beyond the realm of possibility and into the realm of plausibility. It is alleged as fact that at least one of the officers involved had a history of engaging in conduct that violated the same constitutional rights of citizens in the Borough. It is a reasonable inference that these prior incidents involved similar conduct to that alleged: the use of excessive force, effectuating false arrests, and the filing of unfounded charges. Under these circumstances plaintiff has provided a factual basis to support a reasonable expectation that discovery will provide evidence to support the elements of the failure to train claim against the Borough.

The Borough's attempt to dismiss the claim because it is grounded in the Fourteenth Amendment is unavailing. "The touchstone of due process is the protection of the individual against arbitrary action of government." Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Where a member of the executive branch is alleged to have engaged in abusive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. at 375 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). To generate liability the conduct "must be so ill-conceived or malicious that it 'shocks the conscience.'" Id.

The "shocks the conscience" standard is not self-executing. Id. It nevertheless serves as "the beginning point in asking whether or not the objective character of [the conduct in question] is consistent with our traditions, precedents, and historical understanding of the Constitution and its meaning." Id. (citing Lewis, 523 U.S. at 857 (Kennedy, J., concurring)).

The degree of wrongfulness needed to satisfy the "conscience-shocking" standard depends upon the circumstances of the particular case. Id. In other words, deliberate

14

indifference or even arbitrary action may rise to the required level in one setting and fall short in another. Id. at 375-76. For example, settings that call for instantaneous and pressured decisions without the ability to consider the risks such as the high speed chase in Lewis demand proof of an intent to harm. Id. at 375. Consideration must be given to the rights involved, the degree of deprivation, the setting in which the action occurred, the time available for the actor to reflect or consider the risks and repercussions of a particular course of action, and so forth. Id.

A municipality can be found to have violated the constitution on a failure to train theory where its action or inaction with regard to training its employees amounts "to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997)). Where municipal "policymakers are on actual or constructive notice that a particular omission in their training program causes [the municipality's] employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. (quoting Bryan County, 520 U.S. at 407). It is the "policy of inaction" in light of notice that its program will cause constitutional violations that "is the functional equivalent of a decision by the [municipality] itself to violate the Constitution." Id. (quoting Canton, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). Of course, such a decision may be found to be arbitrary and provides the basis for imposing liability under the Fourteenth Amendment. Id. For these reasons, the Borough's effort to have the Monell

15

claim dismissed pursuant to the "shocks-the-conscience" standard announced in Lewis must be denied.

A claim against Chief Naviglia seeking to proceed on supervisory liability based on his role in establishing the Borough's allegedly constitutionally deficient policy, practice or custom also has been sufficiently set forth. "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex re. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989)). Plaintiff alleges that Chief Naviglia had the responsibility to and did set the Borough's policies as to training for members of the police force. He also alleges that the Chief had personal knowledge of the past incidents that provide the basis for establishing the alleged unconstitutional policy, practice or custom. Under these circumstances a claim for supervisory liability against Chief Naviglia based on his role as a policymaker for the Borough plausibly has been set forth.

The claim against Chief Naviglia will be dismissed to the extent it is premised on a theory that Chief Naviglia "participated in violating [] plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3dCir. 1995)). Pleading such a claim requires a factual basis that raises an inference that the supervisor participated in the violation, or directed his or her subordinates to violate the plaintiff's constitutional rights, or had knowledge that they were in the process of doing so and acquiesced in the offending course of conduct. Santiago v. Warminster Township, 629 F.3d 121, 130 (3d

16

Cir. 2010). Plaintiff has not raised any facts to support an inference that Chief Naviglia had any personal involvement in plaintiff's arrest or knew that the individual officers were bringing charges against plaintiff to retaliate against him for being vocally critical of Thom's conduct and threatening to report it. Consequently, the complaint does not set forth a plausible claim for relief under this theory of supervisory liability.

Finally, the individual defendants' efforts to invoke the protection of qualified immunity at this juncture is wide of the mark. Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." ALA, Inc. v. CCAIR, *Inc.*, 29 F.3d 855, 859 (3d Cir.1994); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases). Accordingly, absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir.1996) (citation omitted)); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998) (recognizing entitlement to official immunity on face of complaint); Santamorena v. Georgia Military College, 147 F.3d 1337, 1342 (11th Cir.1998) (recognizing entitlement to qualified immunity on face of complaint).

Qualified immunity shields "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A defendant has the burden to establish that he is entitled to qualified immunity." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated, "the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, the analysis proceeds to the second step: "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. A right is clearly established in the particular context if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. However, if it was not clear "to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Kopec, 361 F.3d at 776.

Plaintiff alleges enough factual matter which when taken as true raises the inference that Thom assaulted plaintiff and thereafter the individual defendants jointly pursued charges against plaintiff to retaliate against him for threatening to report Thom's conduct. A reasonable inference also is raised that such charges were brought in order to shield Thom from any repercussions from the threatened report. The allegations indicate the individual defendants lacked probable cause or any reasonable basis for bringing such charges. The factual averments and the reasonable inferences therefrom sufficiently state claims for constitution violations of plaintiff's Fourth and First Amendment rights that are plausible on their face pursuant to the established case law.

The right to be free from the use of excessive force and the right to be free from

unfounded charges brought in retaliation for exercising a right to be free from improper governmental misconduct were more than well established at the time in question. See e.g. Graham v. Connor, 490 U.S. 386, 394 (1989) (the Fourth Amendment protects against a police officer's use of excessive force on a civilian); Brandenburg v. Ohio, 395 U.S. 444, 447-448 (1969) (Pursuant to the constitutional guarantee of free speech, a state may not ". . . forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."; Johnson v. Campbell, 332 F.3d 199, 212 (3d Cir. 2003) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.") (quoting City of Houston v. Hill, 482 U.S. 451, 462–63 (1987)). Similarly, it has long been settled that a supervisor for a municipal entity with policymaking authority can be found to have violated a citizen's constitutional rights where the failure to train law enforcement personnel amounts "to [the] 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick, 131 S. Ct. 1360. Thus, the rights in question were clearly established.

Furthermore, the cases are legion that recognize under circumstances substantially similar to those alleged in the complaint that the use of excessive force violates the Fourth Amendment, filing charges in retaliation for asserting an intent to exercise one's right to complain about oppressive government conduct violates the First Amendment, and being deliberately indifferent to an established policy, practice or custom of violating a citizen's constitutional rights violates the right to due process. In other words, plaintiff alleges a course of action that has been recognized as unconstitutional on prior occasions and defendants have failed to identify anything unique or unusual about the particular conduct that specifically has been alleged. It follows that

19

the face of the complaint does not show an entitlement to qualified immunity and the individual defendants have not otherwise met their burden to prove entitlement to qualified immunity. Accordingly, their motion to dismiss on this basis must be denied.

Date: March 14, 2013

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Timothy P. O'Brien, Esquire
John M. Giunta, Esquire

(*Via CM/ECF Electronic Mail*)